**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **ELISA LYLES, et al.,** | ) | |
| **Plaintiffs,** | ) | |
| **v.** | ) | **Civ. Action No. 00-2007 (RJL)** |
| **JOHN MICENKO, et al.,** | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION AND ORDER**
(October 6th, 2005) [#50]

Plaintiffs, Elisa Lyles and Tom Mark ("the plaintiffs"), brought this action seeking damages for civil rights violations under 42 U.S.C. § 1983 and various civil torts against the the District of Columbia, individual police officers, and their next door neighbors, John and Ellen Micenko ("the Micenkos"). *See* Pls.' Am. Compl. The Micenkos have moved for summary judgment. Upon consideration of the parties' submissions and the entire record herein, the Court GRANTS the defendants' motion.[1]

## BACKGROUND FACTS

In 1999, the parties resided in adjoining townhomes that shared a common façade in the Capitol Hill section of the city. Defs.' Statement of Facts ¶ 2; Pls.' Opp'n to Defs.' Mot.

---

[1] Defendants District of Columbia and the named individual police officers also moved for summary judgment on April 28, 2005. As of the date of this opinion, however, the motion is not ripe due to a series of necessary deadline extensions.





for Summ. J. ¶ 1. Starting with a house painting dispute in July 1999, disputes constantly arose between Ms. Lyles and Mrs. Micenko across a wide range of issues. Defs.' Statement of Facts ¶¶ 4-5; Pls.' Opp'n to Defs.' Mot. for Summ. J. ¶ 1. The acrimonious relationship culminated on or about August 20, 1999, with a dispute concerning the removal of an oil tank from the back of the Micenkos' property, which necessitated the involvement of Metropolitan Police Department Officers ("MPD"). Defs.' Statement of Facts ¶ 7; Pls.' Opp'n to Defs.' Mot. for Summ. J. ¶¶ 2-6. According to the plaintiffs, the MPD on that occasion forced Ms. Lyles to stay at home as the police and the Micenkos determined whether the oil tank could be removed from the defendants' backyard through the plaintiffs' backyard. Pls.' Am. Compl. ¶¶ 23-36; Pl. Lyles Dep. ¶¶ 27-32, 99-118. Plaintiffs allege in their complaint that the MPD and the Micenkos "intentionally and maliciously conspired" to intimidate the plaintiffs concerning these various disputes. Pls. Am. Compl. ¶ 51. Plaintiffs also allege that Ms. Lyles was arrested the next day by the MPD and held for two days by MPD on felony assault charges based on false allegations by the Micenkos that Ms. Lyles attempted to hit Mrs. Micenko with a copper pipe.[2] *Id.* at ¶¶ 40-49; Pls.' Opp'n to

---

[2] The charge was eventually reduced to simple assault and Ms. Lyles was acquitted in a bench trial by Judge Wright in Superior Court on November 2, 1999. Super. Ct. Crim. Trial Tr. at 113-15. The Court noted that the case was one that "ha[d] to be decided on credibility" and that having listened to all of the witnesses, found that Ms. Lyles' version of what occurred with the pipes (that, in moving the pipes, Ms. Lyles accidently struck the lamp) was "more likely true than not true." *Id.* at 114. The Court added that physical facts did not support Mrs. Micenko's testimony that Ms. Lyles had struck the lamp several times without causing any damage. *Id.* Ultimately, the Court stated that it could not "find beyond a reasonable doubt that [Ms. Lyles] did strike or even attempted to strike [Mrs. Micenko]." *Id.*

Defs.' Mot. for Summ. J. ¶ 15. According to the plaintiffs, the police had no probable cause to arrest Ms. Lyles. As a result of her arrest and detention and subsequent prosecution for assault, the plaintiffs allege that Ms. Lyles suffered from post-traumatic stress disorder which adversely affected their marriage. Pls.' Am. Compl. ¶¶ 58-60, 72-74. Plaintiffs also contend that defendants defamed the plaintiffs by telling the surrounding neighbors that Ms. Lyles was "crazy." Pls.' Am. Compl. ¶¶ 67-69.[3]

The plaintiffs filed a suit in this Court on December 14, 2000 seeking monetary damages from the Micenkos for false arrest, false imprisonment, intentional infliction of emotional distress, malicious prosecution, slander and defamation, gross negligence, negligent infliction of emotional distress and loss of consortium. The Micenkos have moved for summary judgment as to Counts IV (i.e., Intentional Infliction of Emotional Distress), V (i.e., Malicious Prosecution), VI (i.e., Slander and Defamation) and IX (i.e., Loss of Consortium) of the amended complaint.[4] The Court will address each of these counts

---

3 The disputes between the parties making out the basis for the amended complaint are stated more expansively in the various pleadings contained in the record for this matter. For example, in the complaint, the plaintiffs detail more fully the disagreement over the painting of the Micenkos' house, including the Micenkos leaving painting debris on Ms. Lyles' property.

4 Defendants refer to Count IV in their Motion for Summary Judgment as an action for intentional infliction of emotional distress and negligent infliction of emotional distress. Defs.' Mot. for Summ. J. at 1. However, these two claims are separate counts as stated in plaintiffs' amended complaint. Pls.' Am. Compl. ¶¶ 58-60, 72-73. Accordingly, the Court will treat defendants' motion for summary judgment as if it addressed each count separately. The defendants have not moved for summary judgment as to Counts II (i.e., false arrest), III (i.e., false imprisonment), and VII (i.e., gross negligence) of the plaintiffs' amended complaint.

separately and for the following reasons, GRANTS summary judgment to each of those counts, and Count VIII (i.e., Negligent Infliction of Emotional Distress).

## ANALYSIS

### A. Standard of Review

Summary Judgment is appropriate when the pleadings and the record demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995). To determine which facts are "material," a Court must look to the substantive law on which each claims rests. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248. Additionally, to be a genuine issue of fact, it must be supported by sufficient admissible evidence such that a reasonable trier of fact could find for the nonmovant. *See Laningham v. United States Navy*, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987).

The moving party bears the initial burden of "identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact." *See Celotex*, 477 U.S. at 323-24. In order to prevail on its motion for summary judgment, the movant must show that the nonmovant "fail[ed] to make a showing sufficient

to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.

In opposing summary judgment, the "nonmoving party [must] go beyond the pleadings and by [its] own affidavits, or by the 'admissions on file,' designate 'specific facts showing that there is a genuine issue for trial." *Id.* at 324. The Court must view the facts in the light most favorable to the nonmovant, giving the nonmovant the benefit of all justifiable inferences derived from the evidence in the record. *Anderson*, 477 U.S. at 255 (1986). The nonmovant, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252. However, it may not rely solely on allegations or conclusory statements. *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999); *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993). The nonmovant must present specific facts that would enable a reasonable jury to find in its favor. *Greene*, 164 F.3d at 675. If the evidence presented "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50.

However, a court ruling on summary judgment motions must not determine the credibility of witnesses or weigh material facts legitimately in dispute. *Anderson*, 477 U.S. at 255 ("[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge"); *Exxon v. Fed. Trade Comm'n*, 663 F.2d 120, 126 (D.C. Cir. 1990) (holding that the function of the court is to determine whether relevant factual controversy exists; it is not to make determinations

of contested fact) (emphasis added). The drawing of inferences is the jury's function so long as the competing inferences are reasonable under the law. *Anderson*, 477 U.S. at 255.

B. Count IV: Intentional Infliction of Emotional Distress

Plaintiffs' allege that the defendants' conduct of initiating the complaint with the MPD that led to Ms. Lyles' arrest, incarceration and subsequent criminal trial, for a crime that Ms. Lyles maintains she never committed, caused her severe emotional distress. Pls.' Am. Compl. ¶¶ 58-60. However, after reviewing both parties' motions and accompanying documents in support of their positions, the Court finds that plaintiffs have failed to establish that the conduct of the defendants rose to the necessary level of "outrageousness" or that plaintiff suffered the necessary "severe emotional distress" and, therefore, grants defendants motion for summary judgment as to this count.

To prove a claim of intentional infliction of emotional distress, "a plaintiff must show (1) extreme and outrageous conduct on the part of the defendant which (2) intentionally or recklessly (3) causes the plaintiff 'severe emotional distress.'" *Larijani v. Georgetown Univ.*, 791 A.2d 41, 44 (D.C. 2002). The conduct alleged must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Homan v. Goyal*, 711 A.2d 812, 818 (D.C. 1998)(quoting *Drejza v. Vaccaro*, 650 A.2d 1308, 1316 (D.C. 1994). Liability does not extend to "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." RESTATEMENT (SECOND) OF TORTS § 46, Comment (d) (1965). Recovery is not

permitted merely because conduct causes mental distress. *District of Columbia v. Thompson*, 570 A.2d 277, 290 (D.C. 1990)

While the events that occurred during August 1999, viewed in the light most favorable to the plaintiffs, are unfortunate, initiating a complaint with the police about them, even if false, is not conduct that rises to the level of "outrageousness" as to be beyond all possible levels of decency and utterly incomprehensible in a civilized society. Therefore, this Court finds that the actions claimed to have inflicted emotional distress on the plaintiffs are not sufficiently outrageous as a matter of law.

Moreover, as to plaintiffs' claim that Ms. Lyles suffered "severe emotional distress," they have submitted nothing more than mere allegations or conclusory statements by Ms. Lyles that she suffers from such a condition. The list of the names and addresses she has provided of a licensed social worker, internist and gynecologist who treated Ms. Lyles after her arrest and incarceration, combined with her deposition transcript, even when viewed in the light most favorable to the plaintiff, do not establish "by sufficient admissible evidence that a reasonable trier of fact could find for the nonmovant" on the existence of this element of the claim. *Laningham*, 813 F.2d at 1242-43. Thus, after reviewing the pleadings and the accompanying documents, the Court grants defendants' motion for summary judgment as to the claim of intentional infliction of emotional distress.

C. Count VI: Defamation (Slander)

Plaintiffs allege that the defendants defamed Ms. Lyles when they told their neighbors and the MPD that Ms. Lyles was "crazy" and that she had assaulted Mrs. Micenko. Pls.' Opp'n to Defs.' Mot. for Summ. J. at 10-11. After reviewing both parties' motions and accompanying documents in support of their positions in a light most favorable to the plaintiffs, the Court grants defendants' motion for summary judgment as to the claim of defamation.

A plaintiff bringing a defamation action "must show (1) that the defendant made a false and defamatory statement concerning the plaintiff; (2) that the defendant 'published' the statement without privilege to a third party; (3) that the defendant's fault in publishing the statement amounted to at least negligence; and (4) either that the statement was actionable as a matter of law irrespective of special harm of that its publication caused the plaintiff special harm." *Prins v. International Tel. and Tel. Corp.*, 757 F. Supp. 87, 90 (D.D.C. 1991); *Beeton v. District of Columbia*, 779 A.2d 918, 923 (D.C. 2001). For a statement to be defamatory, the statement must injure the plaintiff "'in his trade, profession or community standing, or lower him in the estimation of the community'...But an allegedly defamatory remark must be more than unpleasant or offensive; the language must make the plaintiff appear 'odious, infamous, or ridiculous.'" *Howard Univ. v. Best*, 484 A.2d 958, 988-89 (D.C. 1984)(citations omitted)(finding that there was no defamatory language in defendants publication to third parties).

Plaintiffs have provided neither documentation, nor affidavits, that would establish that there was the necessary "publication" with defamatory meaning. As such, their allegations of defamation would not permit a reasonable juror to find in plaintiffs' favor absent some admissible proof. Thus, the defendants' motion for summary judgment as to the claim of defamation is granted.

D. <u>Count VIII: Negligent Infliction of Emotional Distress</u>

Plaintiffs allege that the defendants' conduct of initiating the complaint with the MPD that led to Ms. Lyles' arrest, incarceration and subsequent criminal trial, for a crime that Ms. Lyles maintains she never committed, caused her emotional distress that warrants a claim of negligent infliction of emotional distress. Pls.' Opp'n to Defs.' Mot. for Summ. J. at 8-9. This Court finds that plaintiff Lyles was not in an actual zone of physical danger and, therefore, grants defendants' motion for summary judgment as to this count.

To establish a prima facie case of negligent infliction of emotional distress, the plaintiff must show that he was "in the zone of physical danger" created by the defendant's conduct and was caused "to fear for his or her own well-being." *Williams v. Baker*, 572 A.2d 1062, 1067 (D.C. 1990). The plaintiff must also show that the emotional distress is "serious and verifiable." *Jones v. Howard Univ.*, 589 A.2d 419, 424 (D.C. 1991) "The plaintiff's presence in the zone of danger must be contemporaneous with his fear for his own safety." *Id.* at 423. However, the plaintiff does not have to establish that an actual physical impact occurred to

recover for a claim of negligent infliction of emotional distress. *Sowell v. Hyatt Corp.*, 623 A.2d 1221, 1224 (D.C. 1993). The plaintiffs here have done neither.

Simply stated, Ms. Lyles has not shown that the actions of the defendants at any time placed her in actual physical danger. Ms. Lyles seeks to rely on mere allegations, or conclusory statements, that the emotional distress suffered as a result of defendants' actions was "serious or verifiable." At no point in the complaint, her answers to interrogatories or her deposition does she provide proof of any act of the defendants that created an unreasonable risk that she would suffer bodily harm during the events of August 1999, or that the distress she endured was serious and verifiable. Therefore, viewing the facts in the light most favorable to the nonmovant, the Court grants summary judgment for the defendants on the claim of negligent infliction of emotional distress.

E. Count IX: Loss of Consortium

In plaintiffs' complaint, plaintiff Tom Mark filed a claim for loss of consortium alleging that the defendants "have significantly impaired normal consortium and impaired enjoyment of life to Mr. Mark." Pls.' Am. Compl. at ¶ 74. The defendants counter, however, that the plaintiffs have not adequately established that Mr. Mark and Ms. Lyles are indeed married; an essential element to recover for loss of consortium. For the following reasons, the Court agrees and grants summary judgment on this count as well.

A spouse may recover damages for loss of consortium due to: (1) an injury negligently inflicted upon the other spouse or; (2) an injury to the marital relationship where the spouse

suffered no physical harm. *See Crowley v. North American Telecomm. Ass'n*, 691 A.2d 1169, 1175 (D.C. 1997)(recognizing a loss of consortium claim where there was no physical harm to a spouse). A lawful marital relationship must exist, however, at the time of the tortious conduct toward and the injury to one spouse. *Stager v. Schneider*, 494 A.2d 1307, 1315 (D.C. 1985)(finding that husband had a justiciable claim for relief based on loss of consortium). The term consortium includes material services, the affection, companionship, sexual relations between a man and wife, and other aspects shared between spouses. *See Crowley*, 691 A.2d at 1174. The plaintiff must prove "an actual loss of services or affection" because of the tort against his or her spouse "even though the latter has suffered no physical injury." *Id*. at 1175.

Here, plaintiffs have only provided conclusory statements that they are in fact married. In plaintiff Lyles' deposition, Lyles stated that she and plaintiff Mark were married in November 1998 in Mexico and subsequently in Alexandria, Virginia on April 1, 1999. Pls.' Ex. 4 at 43-46. Moreover, they claim a marriage license is on file in Alexandria, Virginia, but they have not produced a copy of it. *Id*. at 45-46. Therefore, even viewing the facts in the light most favorable to the plaintiff, the Court grants summary judgment for the defendants on the claim of loss of consortium because there is no concrete evidence in the record to substantiate this essential element of the claim.

F. Count V: Malicious Prosecution

Finally, plaintiffs allege that the actions of the defendants in initiating a false complaint against Ms. Lyles which resulted in her arrest, detention and subsequent prosecution rises to

a level substantiating a claim of malicious prosecution. Pls. Am. Compl. ¶¶ 61-66. This Court disagrees and grants defendants' motion for summary judgment as to this count as well.

In order to support an action for malicious prosecution, a plaintiff must plead and "prove: (1) that the underlying suit terminated in plaintiff's favor; (2) malice on the part of the defendant; (3) lack of probable cause for the underlying suit; and (4) special injury occasioned by plaintiff as the result of the original action." *Tyler v. Centr. Charge Serv., Inc.*, 444 A.2d 965, 968 (D.C. 1982)(reversing lower Court and finding plaintiff had a cause of action for malicious prosecution); *see Ammerman v. Newman*, 384 A.2d 637, 639 (D.C. 1978)(affirming trial court's granting of summary judgment where there was probable cause for the lawsuit, no malice and no injury). The determination of whether the action was instituted with malice is exclusively for the factfinder. *Tyler*, 44 A.2d. at 969. The plaintiff need not prove "actual malice to satisfy this requirement...the requisite malice can be established from the existence of a willful, wanton, reckless, or oppressive disregard for the rights of the plaintiff." *Id.*

Evidence of probable cause acts as a valid defense to a claim of malicious prosecution. *Ammerman*, 384 A.2d at 639. "Probable cause has been said to be such reason supported by facts and circumstances as will warrant a cautious man in the belief that his action and the means taken in prosecuting it are legally just and proper." *Id.* at 639-40. However, the party instituting a suit does not need to be sure that the action will be successful to have probable cause to institute the action. *Id.* at 640. "Probable cause does not mean sufficient cause." *Id.*

Whether a person has probable cause to institute a suit "depends not on the actual state of the case in point of fact, but upon the honest belief of the person instituting it and may flow from a belief that turns out to be unfounded as long as it is not unreasonable." *Id.*

In this case, there was more than adequate probable cause. Indeed, there is no genuine issue of material fact as to whether there was probable cause for the defendants to initiate a complaint in this case. A federal prosecutor, after reviewing the facts and evidence, was sufficiently satisfied that there was probable cause to charge Ms. Lyles. A Superior Court judge was sufficiently satisfied to conduct a trial of the same. The fact that Ms. Lyles was ultimately acquitted does not negate the initial determination of probable cause necessary for the U.S. Attorney's office to proceed in the first place. Accordingly, the defendants' motion for summary judgment is granted as to this count as well.

**CONCLUSION**

For the foregoing reasons, the Court GRANTS defendants' motion for summary judgment on Counts IV, V, VI, VIII and IX. An appropriate Order will issue with this Memorandum Opinion.

**ORDER**

For the reasons set forth in the Memorandum Opinion entered this date, it is, this 6th, day of October 2005, hereby

**ORDERED** that Mr. and Mrs. Micenko's motion for summary judgment is GRANTED.

**SO ORDERED.**

RICHARD J. LEON
United States District Judge