**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

**FILED**

JUN 2 9 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

| | | |
|---|---|---|
| ELISA LYLES, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civ. Action No. 00-2007 (RJL) |
| | ) | |
| JOHN MICENKO, et al., | ) | |
| | ) | |
| Defendants. | ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>
(June 28, 2006) [#55]

Plaintiffs, Elisa Lyles and Tom Mark ("the plaintiffs"), brought this action seeking

damages for civil rights violations under 42 U.S.C. § 1983 and various civil torts against the

the District of Columbia, several individual police officers, and their next door neighbors,

John and Ellen Micenko ("the Micenkos"). (*See* Am. Compl.) Defendants, the District of

Columbia, Officer George Chester, Officer Philip Parker, Officer Clearwater, Officer Sheri

Fenner, and Officer Colin Hall (collectively the "D.C. Defendants")[1] have moved for

summary judgment. Upon consideration of the parties' submissions and the entire record

herein, the Court GRANTS the D.C. Defendants' motion for summary judgment.

**BACKGROUND FACTS**

In 1999, the parties resided in adjoining townhomes that shared a common façade in

the Capitol Hill section of the city.[2] (Am. Compl. ¶ 10.)  Starting with a house painting

---

[1]     The individual officers named in the amended complaint will be referred to collectively
as "the Officers" when necessary to distinguish them from the District of Columbia as defendants.

[2]     The "Background" section of this Memorandum Opinion has been adapted from this
Court's earlier Memorandum Opinion in *Lyles v. Micenko*, 404 F. Supp. 2d 182, 184-86 (D.D.C. October

dispute in July 1999, and the use of plaintiffs' yard by the Micenkos, disputes constantly arose between Ms. Lyles and Mrs. Micenko across a wide range of issues. (Am. Compl. ¶¶ 11-51.) The acrimonious relationship culminated on or about August 20, 1999, with a dispute concerning the removal of an oil tank from the back of the Micenkos' property, which necessitated the involvement of Metropolitan Police Department ("MPD") Officers. (Pls.' Mem. Of P. & A. in Supp. Of Pl.'s Opp. To Defs.' Mot. For Summ. J. ("Pls.' Opp.") 2-5.) According to the plaintiffs, the MPD, particularly the D.C. Defendants, on that occasion forced Ms. Lyles to stay at home as the police and the Micenkos determined whether the oil tank could be removed from the defendants' backyard through the plaintiffs' backyard. (Am. Compl. ¶¶ 23-36; Pl. Lyles' Dep. ¶¶ 27-32, 99-118.) Plaintiffs allege in their complaint that the D.C. Defendants and the Micenkos "intentionally and maliciously conspired" to intimidate the plaintiffs concerning these various disputes. (Am. Compl. ¶ 51.) Plaintiffs also allege that Ms. Lyles was falsely arrested the next day by the MPD and held for two days by MPD on felony assault charges based on false allegations by the Micenkos that Ms. Lyles attempted to hit Mrs. Micenko with a copper pipe.[3] (*Id.* at ¶¶ 40-49) According to the

---

6, 2005).

[3]     The charge was eventually reduced to simple assault and Ms. Lyles was acquitted in a bench trial by Judge Wright in Superior Court on November 2, 1999. Super. Ct. Crim. Trial Tr. at 113-15. The Court noted that the case was one that "ha[d] to be decided on credibility" and that having listened to all of the witnesses, found that Ms. Lyles' version of what occurred with the pipes (that, in moving the pipes, Ms. Lyles accidently struck the lamp) was "more likely true than not true." *Id.* at 114. The Court added that physical facts did not support Mrs. Micenko's testimony that Ms. Lyles had struck the lamp several times without causing any damage. *Id.* Ultimately, the Court stated that it could not "find beyond a reasonable doubt that [Ms. Lyles] did strike or even attempted to strike [Mrs. Micenko]." *Id.*

plaintiffs, the police had no probable cause to arrest Ms. Lyles. (*Id.*; Pls.' Opp. 5.)  As a result of her arrest and detention and subsequent prosecution for assault, the plaintiffs allege that Ms. Lyles suffered from post-traumatic stress disorder which adversely affected her marriage.[4]  (Am. Compl. ¶¶ 58-60, 72-74.)

The plaintiffs filed a suit in this Court on December 14, 2000 seeking monetary damages from the D.C. Defendants for violations of 42 U.S.C. § 1983, false arrest, false imprisonment, intentional infliction of emotional distress, malicious prosecution, gross negligence, negligent infliction of emotional distress and loss of consortium.  On August 23, 2004, this Court orally granted the District of Columbia's motion for summary judgment on the § 1983 claim against it, denied the Officers' motion for summary judgment on the § 1983 claim against them, and granted the D.C. Defendants' motion for summary judgment on the claims of negligent infliction of emotional distress and loss of consortium.  The D.C. Defendants have now again moved for summary judgment on the remaining counts against them.  For the following reasons, the Court GRANTS summary judgment for the D.C. defendants as to each of those counts.

## ANALYSIS

A.    Standard of Review

Summary Judgment is appropriate when the pleadings and the record demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to a

---

[4]    The disputes between the parties making out the basis for the amended complaint are stated more expansively in the various pleadings contained in the record for this matter.

3

judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995). To determine which facts are "material," a Court must look to the substantive law on which each claims rests. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248. Additionally, to be a genuine issue of fact, it must be supported by sufficient admissible evidence such that a reasonable trier of fact could find for the nonmovant. *See Laningham v. United States Navy*, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987).

The moving party bears the initial burden of "identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact." *See Celotex*, 477 U.S. at 323-24 (quoting Fed. R. Civ. P. 56(c)). In order to prevail on its motion for summary judgment, the movant must show that the nonmovant "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id*. at 322.

In opposing summary judgment, the "nonmoving party [must] go beyond the pleadings and by [its] own affidavits, or by the 'admissions on file,' designate 'specific facts showing that there is a genuine issue for trial." *Id*. at 324. The Court must view the facts in the light most favorable to the nonmovant, giving the nonmovant the benefit of all justifiable

4

inferences derived from the evidence in the record. *Anderson*, 477 U.S. at 255 (1986). The nonmovant, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252. However, it may not rely solely on allegations or conclusory statements. *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999); *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993). The nonmovant must present specific facts that would enable a reasonable jury to find in its favor. *Greene*, 164 F.3d at 675. If the evidence presented "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50.

However, a Court ruling on summary judgment motions must not determine the credibility of witnesses or weigh material facts legitimately in dispute. *Anderson*, 477 U.S. at 255 ("[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge"); *Exxon v. Fed. Trade Comm'n*, 663 F.2d 120, 126 (D.C. Cir. 1990) (holding that the function of the Court is to determine whether relevant factual controversy exists; it is not to make determinations of contested fact). The drawing of inferences is the jury's function so long as the competing inferences are reasonable under the law. *Anderson*, 477 U.S. at 255.

B.      Count I: 42 U.S.C. §1983 Violation

Plaintiffs' allege that the Officers' actions, omissions, and misconduct violated 42 U.S.C. § 1983, in that Ms. Lyles was deprived of the rights provided to her under the Fourth, Fifth, and Fourteenth Amendments from June 1999 to August 1999 by the

Officers. (Am. Compl. ¶¶ 52-53.) However, after reviewing both parties' pleadings and accompanying documents in support of their positions, the Court finds that the Officers are protected by qualified immunity for their actions and omissions in this case, and, therefore, the Court grants the Officers' motion for summary judgment on this count.

Title 42 of the United States Code Section 1983 states in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

42 U.S.C. § 1983. The Supreme Court, in *Harlow v. Fitzgerald*, stated that "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have know." 457 U.S. 800, 818 (1982). This "qualified immunity" acts as a defense for governmental officials, including police officers, from claims of liability under § 1983. *Anderson v. Creighton*, 483 U.S. 635, 638-41 (1987); *Dist. of Columbia v. Evans*, 644 A.2d 1008, 1014 (D.C. 1994). Thus, the first step in an inquiry of this kind is to determine whether the officers' conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Lederman v. United States*, 291 F.3d 36, 46 (2002). If a constitutional violation is present, the Court must then objectively determine if "a reasonable officer could have believed [the officer's

action] to be lawful, in light of the clearly established law and the information the . . .

officers possessed." *See Anderson*, 483 U.S. at 641.

Accordingly, the Court here must determine if the Officers conduct violated the

plaintiffs' Fourth Amendment rights in the search and seizure of the plaintiff and her

residence and her subsequent arrest for assault.[5]  Viewing the facts in a light most

favorable to the plaintiffs, the Court finds the Officers did not violate Ms. Lyles' Fourth

Amendment rights when they arrested her on August 21, 1999.

First, the Court finds that the Officers had probable cause to arrest Ms. Lyles on

August 21, 1999, for assault.   Probable cause for an arrest exists, if at the time of the

arrest "the facts and circumstances within [the officers'] knowledge and of which they

had reasonably trustworthy information were sufficient to warrant a prudent man in

believing" that a crime was committed. *See Beck v. Ohio*, 379 U.S. 89, 91 (1964).  On

August 21, 1999, the MPD received a 911 call from Mrs. Micenko concerning the alleged

assault on her by Ms. Lyles. (*See* Defs.' Ex. 1.) The transcript of the 911 call reveals that

Mrs. Micenko provided to the police department with a description of the assailant, Ms.

Lyles, and described the alleged assault and the instrument used in the assault. (*Id.*)  The

---

[5]        Due to the fact that the Fourteenth Amendment does not apply to the District of
Columbia, *see Bolling v. Sharpe*, 347 U.S. 497, 499 (1954), and that the the Fourth Amendment's
protection against unreasonable search and seizures is the constitutional protection that the Officers
allegedly violated, the Court will analyze the plaintiffs' 42 U.S.C. § 1983 claim under the Fourth
Amendment.  The Court will not analyze plaintiffs' § 1983 under the Fifth Amendment, as that claim is a
general due process violation claim, and when "a particular Amendment provides an explicit textual
source of constitutional protection against a particular sort of governmental behavior, that Amendment,
not the more generalized notion of substantive due process, must be the guide for analyzing these
claims." *Albright v. Oliver*, 510 U.S. 266, 273 (1994).

police report filled out by Officer Fenner stated that the she responded to the 911 call, and

after an investigation, determined that the alleged assailant, Ms. Lyles, was next door in

her house. (*See* Defs.' Ex. 2.) Further supporting the existence of probable cause is the

fact that a federal prosecutor, after reviewing the facts and evidence, was sufficiently

satisfied that there was probable cause to bring charges against Ms. Lyles and a Superior

Court judge was sufficiently satisfied to conduct a trial of the same. Since probable cause

existed to arrest Ms. Lyles for assault, the Officers are protected by qualified immunity

and the Court grants D.C. Defendants' motion for summary judgment on the plaintiffs' §

1983 claim.[6]

C.      Count II and III: False Arrest/False Imprisonment

       Plaintiffs' additionally allege that the D.C. Defendants' conduct of arresting,

imprisoning, and initiating criminal proceedings against Ms. Lyles, for a crime that Ms.

Lyles maintains she never committed, resulted in the false arrest and false imprisonment

of Ms. Lyles. (Am. Compl. ¶¶ 54-57.) However, after reviewing both parties' pleadings

and accompanying documents in support of their positions, the Court concludes that the

officers and other D.C. Defendants not only had probable cause to arrest Ms. Lyles but

probable cause to hold and charge her with an assault. *See Weishapl v. Sowers*, 771 A.2d

1014, 1020-21 (D.C. 2001)(affirming the trial court's granting of summary judgment to

---

[6]      Even assuming that the Officers did not have probable cause to arrest Ms. Lyles, the
Court finds that the Officers would be entitled to qualified immunity because their decision to arrest and
charge Ms. Lyles was reasonable. *See Hunter v. Bryant*, 502 U.S. 224, 228-29 (1991). Similarly, the
Court find that the officers other conduct in the handling of the neighborly dispute was also reasonable
under the circumstances and, therefore, is subject to qualified immunity.

defendants on a claim of false arrest); *Gueory v. Dist. of Columbia*, 408 A.2d 967, 969

(D.C. 1979)(finding that there was no genuine issue to be submitted to a jury as to the

probable cause to arrest the plaintiff). Therefore, the Court grants D.C. Defendants'

motion for summary judgment on these counts.[7]

The main component of a claim for false arrest or false imprisonment is an

unlawful detention. *Marshall v. Dist. of Columbia*, 391 A.2d 1374, 1380 (D.C.

1978)(listing the elements of a false arrest claim). Depriving someone of the ability to

freely move for any amount of time, either by real force or the threat of force, will be

sufficient to bring a claim for false arrest or false imprisonment. *Id.* The existence of

probable cause for the arrest or imprisonment is a valid defense to a claim of false arrest

or imprisonment. *Shaw v. May Dept. Stores Co.*, 268 A.2d 607, 609 (D.C. 1970)(stating

that in the District of Columbia a showing of probable cause is a valid defense in an

action for false imprisonment). The District of Columbia Court of Appeals has stated that

"[i]n civil cases the test is whether the officer had a reasonable good faith belief that the

suspect has committed or is committing a crime, based on the fact and circumstances then

known to him." *Gueory*, 408 A.2d at 969. The question of whether an officer had

probable cause for an arrest is a legal question to be resolved by the Court when the facts

are undisputed. *Tillman v. Wash. Metro. Area Transportation Auth.*, 695 A.2d 94, 96

---

[7]      Since there is no significant difference between false arrest and false imprisonment and
that the elements of both torts are the same, this Court will address them as if they were one count of the
complaint even though the plaintiffs listed them as two separate counts. *See Shaw v. May Dept. Stores
Co.*, 268 A.2d 607, 609 n.2 (D.C. 1970); *see also Marshall v. Dist. of Columbia*, 391 A.2d 1374, 1380 &
n.1 (D.C. 1978).

(D.C. 1997)(affirming the trial court's dismissal of plaintiff's claim for false arrest as the arresting officers had probable cause to arrest the plaintiff).  When determining if the conduct of police officer constituted false arrest or false imprisonment, the Court must review the evidence of probable cause as the "facts and circumstances" were known to the arresting officer at the time of the arrest, and probable cause exists if the evidence would "warrant a prudent man in believing that the offense [had] been committed." *Shaw*, 268 A.2d at 609.  For the reasons set forth above, the arrest was based on probable cause, as were the charges against Ms. Lyles and her detention, and the police officers were justified in their actions.  *See Tillman*, 695 A.2d at 96; *Koroma v. United States*, 628 F. Supp. 949, 952 (D.D.C. 1986)(finding actions of police officers was not reasonable in light of all the circumstances surrounding the arrest of the plaintiffs).  Accordingly, D.C. Defendants' motion for summary judgment is granted as to these charges.

D.     Count IV:  Intentional Infliction of Emotional Distress

Plaintiffs' allege that the D.C. Defendants' conduct of arresting, incarcerating, and initiating criminal proceedings against Ms. Lyles, for a crime that Ms. Lyles maintains she never committed, caused her severe emotional distress. (Am. Compl. ¶¶ 58-60.)  However, after reviewing both parties' pleadings and accompanying documents in support of their positions, the Court finds that plaintiffs have failed to establish that the conduct of the D.C. Defendants either rose to the level of "outrageousness" necessary, or that the plaintiff suffered the "severe emotional distress" necessary to establish a prima facie case of

intentional infliction of emotional distress.  Accordingly, the Court grants D.C. Defendants motion for summary judgment as to this count.

To prove a claim of intentional infliction of emotional distress, "a plaintiff must show (1) extreme and outrageous conduct on the part of the defendant which (2) intentionally or recklessly (3) causes the plaintiff 'severe emotional distress.'" *Larijani v. Georgetown Univ.*, 791 A.2d 41, 44 (D.C. 2002).  The conduct alleged must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Homan v. Goyal*, 711 A.2d 812, 818 (D.C. 1998)(quoting *Drejza v. Vaccaro*, 650 A.2d 1308, 1312 n.10 (D.C. 1994).  Liability does not extend to "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." Restatement (Second) of Torts § 46, Comment (d) (1965).  Moreover, recovery is not permitted merely because conduct causes mental distress. *District of Columbia v. Thompson*, 570 A.2d 277, 290 (D.C. 1990)

While the events that occurred during August 1999, viewed in the light most favorable to the plaintiffs, were unfortunate, the arrest, incarceration, and initiating of criminal proceedings against Ms. Lyles is not conduct that rises to the level of "outrageousness" as to be beyond "all possible bounds of decency" and "utterly intolerable in a civilized community." *See Homan v. Goyal*, 711 A.2d at 818.  Therefore, this Court finds that the actions claimed to have inflicted emotional distress on the plaintiffs are not sufficiently outrageous as a matter of law.

Moreover, as to plaintiffs' claim that Ms. Lyles suffered "severe emotional distress," plaintiffs have submitted mere allegations or conclusory statements by Ms. Lyles that she suffers from such a condition.  The list of names and addresses of a licensed social worker, internist and gynecologist who treated Ms. Lyles after her arrest and incarceration, combined with her deposition transcript, even when viewed in the light most favorable to her, do not establish by sufficient admissible evidence that a reasonable trier of fact could find for the nonmovant on the existence of this element of the claim.  *See Laningham*, 813 F.2d at 1242-43.  Thus, after reviewing the pleadings and the accompanying documents, the Court grants D.C. Defendants' motion for summary judgment as to the claim of intentional infliction of emotional distress.

E.     Count V:  Malicious Prosecution

Plaintiffs also allege that the actions of the D.C. Defendants in initiating the arrest of and criminal proceedings against Ms. Lyles rises to a level substantiating a claim of malicious prosecution.  (Am. Compl. ¶¶ 61-66.)  This Court disagrees and grants D.C. Defendants' motion for summary judgment as to this count as well.

In order to support an action for malicious prosecution, a plaintiff must plead and "prove:  (1) that the underlying suit terminated in plaintiff's favor; (2) malice on the part of the defendant; (3) lack of probable cause for the underlying suit; and (4) special injury occasioned by plaintiff as the result of the original action." *Tyler v. Centr. Charge Serv., Inc.*, 444 A.2d 965, 968 (D.C. 1982)(reversing lower Court and finding plaintiff had a cause of

12

action for malicious prosecution); *see Ammerman v. Newman*, 384 A.2d 637, 639 (D.C. 1978)(affirming trial court's granting of summary judgment where there was probable cause for the lawsuit, no malice and no injury). The determination of whether the action was instituted with malice is exclusively for the factfinder. *Tyler*, 444 A.2d. at 969. The plaintiff need not prove "actual malice to satisfy this requirement...the requisite malice can be established from the existence of a willful, wanton, reckless, or oppressive disregard for the rights of the plaintiff." *Id.*

Evidence of probable cause is a valid defense to a claim of malicious prosecution. *Ammerman*, 384 A.2d at 639. "[P]robable cause has been said to be such reason supported by facts and circumstances as will warrant a cautious man in the belief that his action and the means taken in prosecuting it are legally just and proper." *Id.* at 639-40. However, the party instituting a suit does not need to be sure that the action will be successful to have probable cause to institute the action. *Id.* at 640. "Probable cause does not mean sufficient cause." *Id.* Whether a person has probable cause to institute a suit "depends not on the actual state of the case in point of fact, but upon the honest belief of the person instituting it and may flow from a belief that turns out to be unfounded as long as it is not unreasonable." *Id.*

As discussed at length previously, there is no genuine issue of material fact as to whether there was probable cause for the D.C. Defendants to initiate the arrest of and the criminal proceedings against Ms. Lyles. The fact that Ms. Lyles was ultimately acquitted does not negate the initial determination of probable cause necessary for the officers and

prosecutors in the U.S. Attorney's office to proceed in the first instance. Accordingly, the D.C. Defendants' motion for summary judgment is granted as to this count as well.

F.      Count VII: Gross Negligence

Finally, plaintiffs allege that the actions of the D.C. Defendants during June, July and August of 1999, constituted gross negligence. (Am. Compl. ¶¶ 70-71; Pls.' Opp. 18.) The Court does not find that the D.C. Defendants' actions or omissions during this time period meets the standard of gross negligence, and, therefore, grants the D.C. Defendants' motion for summary judgment as to this count.

Although not plead as such, the Court assumes that plaintiffs seek to recover under the common law tort of gross negligence, as the amended complaint alleges that the "actions, omissions, and misconduct" of the D.C. Defendants constituted "gross negligence in the District of Columbia." (*See* Am. Compl. ¶ 71.) To support the common law cause of action for gross negligence, the plaintiffs must establish: (1) that there is a duty of care owed to the plaintiffs by the defendants; (2) that there was a breach of that duty; (3) that there was damage to the plaintiff; and (4) that the breach of the duty by the defendants proximately caused the damage. *Dist. of Columbia v. Cooper*, 483 A.2d 317, 321 (D.C. 1984)(holding that the District of Columbia could not be held liable for injuries resulting from an alleged negligent transfer of a prisoner from one facility to another); *In re U.S. Office Prods. Co. Securities Litigation*, 251 F. Supp. 2d 77, 98 (D.D.C. 2003)(dismissing negligence counts for failure to adequately allege an existence of a legal duty). Gross negligence, as defined by the Court of

14

Appeals in the District of Columbia, exists when there is "such an extreme deviation from the ordinary standard of care as to support a finding of wanton, willful and reckless disregard or conscious indifference for the rights and safety of others." *Dist. of Columbia v. Walker*, 689 A.2d 40, 44 (D.C. 1997)(holding that the relevant conduct was not a extreme deviation from the reasonable standard of care as to warrant gross negligence). Simply stated, no conduct approaching this standard has been plead in this case. The actions or omissions of the D.C. Defendants as detailed in the amended complaint and the plaintiffs' pleadings and deposition testimony does not rise to the level that a reasonable juror could find them to "support a finding of wanton, willful and reckless disregard or conscious indifference for the rights and safety" of the plaintiffs. *See Walker*, 689 A.2d at 44. Accordingly, the D.C. Defendants' motion for summary is granted as to the count of gross negligence.

## CONCLUSION

Thus, for all of the foregoing reasons, the Court GRANTS D.C. Defendants' motion for summary judgment on Counts I, II, III, IV, V, and VII. An appropriate Order will issue with this Memorandum Opinion.

RICHARD J. LEON
United States District Judge

15